Jerry M. **KELTNER,** Plaintiff,

v.

The **UNITED STATES,** Defendant.

No. 618–80C.

United States Claims Court.

Dec. 7, 1984.

J. Byron Holcomb, Bremerton, Wash., for plaintiff.

George M. Beasley, III, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## MEMORANDUM OPINION

WIESE, Judge.

This matter is before the court on cross-motions for summary judgment. Oral argument on the motions was heard on November 20, 1984, at the conclusion of which the court entered a bench ruling in the Government's favor. In view of the general applicability of the issue in the case, we retrace here the several grounds upon which the court's bench decision was based.

## FACTS

Plaintiff is a former Naval Reserve Officer who was released from active duty as a result of having twice failed to be recommended for promotion to the grade of commander by Navy promotion boards convened in 1974 and 1975. Prior to his release from active service on June 30, 1976, plaintiff also appeared before a so-called continuation board convened for the purpose of recommending for continuation (*i.e.* retention) certain categories of officers who, like plaintiff, were then scheduled for release from active duty. The purpose of this board was to "select for continuation those officers who fill a service requirement which cannot otherwise be met with other active duty assets." Plaintiff was not selected for retention.

Shortly thereafter, plaintiff brought suit in the United States District Court for the Western District of Washington asking for declaratory and injunctive relief to prevent his release from active duty and to declare null and void the nonselection of those Reserve officers that had not been recommended for promotion by the two selection

boards. On the same date that he commenced his civil action, plaintiff also filed a parallel application with the Board for Correction of Naval Records seeking to void the orders directing his forthcoming release from active duty.

Plaintiff was not successful on either front: the district court denied injunctive relief; the Correction Board denied the request for correction of records. Thereafter, his release from active duty was accomplished as scheduled.

Upon later motion, the district court suspended proceedings on the remainder of plaintiff's suit to allow him to again seek relief before the Correction Board. Once more he was unsuccessful. Plaintiff's second application for administrative relief was rejected on May 22, 1980. Some months later, plaintiff moved the district court for an order to transfer his suit to this court. The allowance of that motion led to the filing of his petition here.

## PLAINTIFF'S CONTENTIONS

Over the course of this litigation plaintiff has contended that the boards which considered his promotion to the rank of commander were illegally constituted in that their membership did not include any Reserve officers as required both by statute and regulation and also that the continuation board was similarly invalidly constituted. It is this argument which he reasserts here.

Specifically, his contention with respect to all the boards that considered him is that a so-called "TAR" officer (Training and Administration of Reserves) is not a Reserve officer within the meaning of the statutes and regulations that dictate Reserve representation on military selection boards. Additionally, as a separate argument, plaintiff contends that the selection boards which considered his military record engaged in statutorily prohibited discrimi-

nation in favor of Regular officers and against Reserve officers.

## DECISION

### A

■ The court rejects plaintiff's contention that a TAR officer is not a Reserve officer within the meaning of the mandatory Reserve representation requirements enumerated in 10 U.S.C. § 266(a) (1982), 10 U.S.C. § 5701(d) (1976) [1] and Department of Defense Instruction ("DOD Inst.") 1205.4 (1959). This contention was not shown to have any basis in law or in fact. Indeed, the argument is all the other way.

The statute authorizing the creation of the TAR program, 10 U.S.C. § 265 (1982), undermines plaintiff's position right from the start: "[E]ach armed force shall have officers of *its reserve components* on active duty ... at the seat of government, and at headquarters responsible for reserve affairs, to participate in preparing and administering the policies and regulations affecting those reserve components [emphasis added]." By the very terms of the enabling statute, a TAR officer is a Reserve officer.

That same identity is repeated in the text of former 10 U.S.C. § 5711 (1976) [2] which expressly refers to officers "ordered to active duty in connection with organizing, administering, recruiting, instructing, training, or drilling the Naval Reserve ..." as "[o]fficers of the Naval Reserve". The short of it is that plaintiff's argument has no foundation in the applicable statutes.

From a factual standpoint too the argument lacks substance. For example, plaintiff makes much of the fact that a TAR officer has been held to have tenure and therefore enjoys the same career opportunity status and protection from removal without cause as a Regular officer. *See Buchanan v. United States*, 223 Ct.Cl. 291, 621 F.2d 373 (1980). On the basis of this

---

**1.** 10 U.S.C. §§ 5701 to 5711 (relating to officer selection boards) were repealed by the Defense Officer Personnel Management Act, Pub.L. 96–513 tit. III, § 333, 94 Stat. 2835, 2897 (1980).

**2.** *See* footnote 1.

similarity in status and nothing more, plaintiff argues that one could anticipate that TAR officers would develop a community of interest with their Regular officer colleagues, thereby undermining the very objectivity expected of them when serving as the Reserve representatives on officer promotion boards. Hence, plaintiff argues that a TAR officer may not be regarded as a Reservist for purposes of satisfying the Reserve representation requirements essential to a lawfully constituted selection board.

Not a shred of factual support was offered to support this argument and the court can see no basis for accepting it. Indeed, it could just as well be said that since the very purpose of the TAR program is to insure continuity in administration and oversight of the Reserve program, one could logically anticipate a TAR officer's allegiance to lie in the direction of the Reserve officer rather than with the Regular officer to whom he is similar only in tenure. Of course, neither alternative is more than conjecture.

Plaintiff also makes much of the fact that, for certain staffing limits, TAR officers are not counted as officers serving on active duty and the fact that they do not appear before the same promotion boards that consider Regular and Reserve officers on active duty. *See* former 10 U.S.C. § 5711(c) (1976). Again, the court is not told why or how these limitations should affect the TAR officer's qualifications to sit as a Reserve officer on a promotion selection board. The limitations noted do no more than insure the purposes of the TAR program by insuring its administrative identity; they do not alter the fact that TAR officers are at the same time Reserve officers.

### B

█ Plaintiff also contends that the continuation board that considered him for retention was unlawfully constituted because a majority of its members were not Reservists. This too is an argument which the court does not accept. The authority upon which plaintiff relies for this proposition, Secretary of the Navy Instruction ("Secnav Inst.") 1920.6 (1971), has no application to this case. That document's stated purpose is to prescribe:

procedures, regulations, and instructions for implementation of statutes which provide for the separation of officers from the Navy and Marine Corps, termination of appointments, revocation of commissions and/or discharge, release from active duty, or other changes in status because of misconduct, unsatisfactory or poor performance of duty, unsuitability, and conduct or conditions which, ... render the continuation of an officer in his present status undesirable.

Specifically exempted from the scope of the Instruction are those releases from active duty that are

required by operation of the promotion system established by law (e.g., failure of selection, report as unsatisfactory, failure of examination) and not needing implementing or supplementary regulations.

In light of the express purpose of Secnav Inst. 1920.6 and the noted exception, it is plain that plaintiff's reliance is misplaced. An involuntary separation from service pursuant to selection board action is definitely not within the purview of the Instruction. Thus, plaintiff's reference to paragraph 9 of Secnav Inst. 1920.6 has no meaning here. The board membership requirements which that paragraph prescribes pertain to hearings on matters that are within the intended scope of the Instruction, for example, hearings related to a bad conduct discharge; they do not pertain to selection boards or to continuation boards.

### C

█ There remains to be considered plaintiff's contention that the disparity in numbers between Regulars and Reservists recommended for promotion demonstrates a practice of unlawful discrimination between the two officer groups and hence conduct violative of the prohibition of 10

U.S.C. § 277 (1982).[3] Plaintiff's figures show that in 1975, for example, Regular officers in the primary zone of consideration experienced a 50 percent promotion rate (383 out of 767) while none of the 7 eligible Reservists were selected. Substantially similar figures portray 1976 results. In that year, Regular officers in the primary zone of consideration enjoyed a 66 percent selection rate (911 out of 1379) while the Reserve selection amounted to 10 percent (1 out of 10).

Plaintiff makes the assumption that these figures present a self-evident case of unequal treatment between Regular officers and Reserve officers. The court does not agree. While the imbalances noted might be suggestive of an unlawful bias on the part of Regular officers against Reserve officers in the selection process, it is equally logical to infer that the disparities reflect nothing more than an honest application of promotion criteria. Proof of plaintiff's case requires more than just a cataloging of numbers whose meaning may cut either way.

However, as plaintiff has set forth statistics that *might* be consistent with the existence of facts supportive of his contention of unlawful discrimination, and since the Government has presented no data that would rule out such a possibility, summary judgment would generally be inappropriate. (A non-moving party is entitled to "the benefit of all reasonable doubts and inferences when passing on a motion for summary judgment," 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 at 177 (1983).)

But this reprieve from judgment is only momentary, for it appears that the records from which plaintiff's proof would have to be drawn, *i.e.* the military personnel folders evaluated by the 1974–75 commander selection boards, were destroyed by the Government in the ordinary course of administrative housekeeping.

Plaintiff contends that the Government should have preserved these records on the ground that it had notice of a claim involving them. The court cannot endorse so broad a rule of notice; the Government should not have to anticipate the possible need for official records in cases brought against it when the party bringing suit has made no effort to secure those records or to otherwise call attention to their indispensability.

Inasmuch as it was plaintiff's burden to have gathered the data in question in the first instance as part of his case-in-chief, so now must he also suffer the burden of its loss. Plaintiff could have moved in the district court for an order compelling production. Indeed, the dictates of the case required exactly that. But that effort was not undertaken and the needed evidence is now beyond retrieval.

Plaintiff therefore could not succeed at trial on his claim of unlawful discrimination because his statistical evidence alone would be insufficient to overcome the presumption to which defendant is entitled: namely, that the officers who sat on the challenged promotion boards acted in accordance with the requirements imposed by statute and regulation. *See Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979). Since trial would be useless, the Government is entitled to judgment as a matter of law. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 at 130 (1983).

### CONCLUSION

For the reasons given, plaintiff's motion for summary judgment is denied, the Government's cross-motion is granted and the complaint is to be dismissed.

---

**3.** 10 U.S.C. § 277 (1982) directs that:
  Laws applying to both Regulars and Reserves shall be administered without discrimination—

  (1) among Regulars;
  (2) among Reserves; and
  (3) between Regulars and Reserves.